UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| LACEY T.,[1] ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:23-cv-00004-KMB-TWP |
| ) | |
| MARTIN J. O'MALLEY,[2] ) | |
| ) | |
| Defendant. ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Joshua S. applied for disability insurance benefits and supplemental security income from the Social Security Administration ("SSA") on September 24, 2020, alleging an onset date of February 1, 2020. [Dkt. 12-5 at 5-21.] His applications were initially denied on February 18, 2021, [dkt. 12-3 at 2-26], and upon reconsideration on August 19, 2021, [*id.* 32-43]. Administrative Law Judge Steven Collins (the "ALJ") conducted a hearing on March 24, 2022. [Dkt. 12-2 at 30.] The ALJ issued a decision on April 29, 2022, concluding that Joshua was not

---

[1] On October 20, 2023, counsel filed a Notice of Suggestion of Death, informing the Court that Plaintiff Joshua S. passed away in July 2023. [Dkt 20 at 1.] On December 15, 2023, Lacey T. moved this Court for an order that she be substituted for her deceased husband, Joshua, as the Plaintiff in this matter. [Dkt. 22 at 1.] The Court granted Lacey's motion on December 28, 2023, thereby substituting Lacey as the Plaintiff in this action. [Dkt. 23.] However, because this matter concerns allegations of Joshua's disability, the Court will continue to refer to Joshua throughout its order for the purposes of adjudicating this appeal. To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Martin J. O'Malley automatically became the Defendant in this case when he was sworn in as Commissioner of the Social Security Administration on December 20, 2023, replacing Acting Commissioner of the Social Security Administration Kilolo Kijakazi.

entitled to receive disability insurance benefits or supplemental security income. [*Id.* at 20.] The Appeals Council denied review on November 7, 2022. [*Id.* at 2.] On January 11, 2023, Joshua timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). [Dkt. 1.]

## I. STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "[E]ven under deferential standard of review for social security disability cases, an [ALJ] must provide a logical bridge between the evidence and [the]

conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotations omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)).  The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted).  "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled.  If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.*  The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327.  When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the

appropriate remedy.  *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).  Typically, a remand is also

appropriate when the decision is not supported by substantial evidence.  *Briscoe ex rel. Taylor v.*

*Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II.  RELEVANT BACKGROUND

Joshua was thirty-six years old on the alleged disability onset date.  [Dkt. 12-2 at 18.]  He

had "limited education" and previously worked as an industrial truck operator, woodworking

machine feeder, driller operator, material handler, cook, and laborer in chemical processing.[3]  [*Id.*]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. §

404.1520(a)(4) and 20 C.F.R. § 416.920(a)(4) and concluded that Joshua was not disabled.  [*Id.* at

13-20.]  Specifically, the ALJ found as follows:

- At Step One, Joshua had not engaged in substantial gainful activity since February 1, 2020, the alleged onset date.  [*Id.* at 13.]

- At Step Two, Joshua had the following severe impairments: chronic obstructive pulmonary disease (COPD) and asthma.  [*Id.* at 14.]

- At Step Three, Joshua did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  [*Id.*]

- After Step Three but before Step Four, Joshua had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following exceptions: The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit for 6 hours in an 8-hour workday. The claimant can stand/walk for a total of 4 hours in an 8-hour workday. The claimant can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can work in environments with no concentrated exposures to extreme cold, extreme heat, and humidity and should avoid even moderate exposures to fumes, odors, dusts, gases, and poor ventilation. The claimant must avoid all exposure to dangerous machinery and unprotected heights." [*Id.* at 15.]

- At Step Four, relying on the testimony of a vocational expert ("VE") and considering his RFC, Joshua was unable to perform any of his past relevant work.  [*Id.* at 18.]

---

[3] The relevant evidence of record is set forth in the Parties' briefs and need not be repeated here. Specific facts relevant to the disposition of this case are discussed below as necessary.

4

- At Step Five, relying on the testimony of a vocational expert ("VE") and considering Joshua's RFC, there were jobs that existed in significant numbers in the national economy that he could have performed through the date of the decision in representative occupations such as router, electrical assembler, and ticket seller.  [*Id.* at 19.]

### III.  DISCUSSION

Joshua presents two arguments challenging the ALJ's decision.  First, Joshua argues that the ALJ erred because he did not include any time off task in the RFC for Joshua to engage in prescribed nebulizer treatments.  Second, Joshua argues that the ALJ erred by failing to analyze whether he met or medically equaled Listing 3.14.  The Court will address each of these arguments in turn.

### A.  Time Off Task for Nebulizer Treatments

Joshua argues that the ALJ committed reversible error in assessing his RFC by not including any time off task for his prescribed nebulizer treatments.  [Dkt. 14 at 14.]  While the ALJ acknowledged that his COPD and asthma were severe impairments, Joshua argues that the ALJ inexplicably assessed no time off task to engage in prescribed nebulizer treatments, which he requires three to four times per day and each take thirty minutes to complete.  [*Id.* at 14-16.]  This omission, in Joshua's estimation, is a result of the fact that the ALJ ignored critical opinions from his pulmonology specialists and failed to adequately explain how he considered such opinions. [*Id.* at 16.]  Accordingly, Joshua claims that the ALJ has not adequately explained the RFC.  [*Id.* at 17.]

In response, the Commissioner contends that the ALJ recognized Joshua's COPD and asthma and explained how he accommodated them in the RFC by limiting Joshua to a limited range of light work with various postural and environmental limits.  [Dkt. 15 at 6.]  The Commissioner argues that the ALJ considered Joshua's treatment with inhalers and a nebulizer, noting improvement with treatment and mainly benign examination findings.  [*Id.* at 6.]  While

Joshua argues that the ALJ should have included more work limitations to accommodate his prescribed use of a nebulizer, the Commissioner contends that this argument relies on Joshua's own statements—not objective medical evidence or treating medical source opinions—that each of his required nebulizer treatments took thirty minutes. [*Id.* at 11.] The Commissioner claims that Joshua's treatment providers did not limit his work functioning because of his nebulizer use, and his medical providers did not state that Joshua's nebulizer treatments had to occur during work hours. [*Id.*] Thus, the Commissioner asserts that the ALJ had no obligation to credit Joshua's respiratory symptoms with limitations for being off task because the record evidence does not support such limitations. [*Id.* at 12.]

In reply, Joshua argues that the Commissioner's defense of the ALJ is illogical and in violation of the *Chenery* doctrine. [Dkt. 19 at 1 (citing *SEC v. Chenery Corp.*, 332 U.S. 194 (1947)).] Joshua maintains that the ALJ did not include a single word of explanation as to why he would not need to engage in at least four prescribed nebulizer treatments per day. [*Id.*] Further, Joshua argues that his assertion that he needs to use a nebulizer four times per day is not some "wild claim." [*Id.* at 2.] Rather, he asserts that his nurse practitioner and respiratory therapist prescribed this treatment regimen. [*Id.*] Joshua also asserts that the Commissioner's argument that he could have timed his nebulizer treatments outside of work or during his lunch break is a *post hoc* rationalization, since the ALJ did not actually provide this reasoning in the decision. [*Id.* at 3.] According to Joshua, remand is required so the ALJ can explain why his nebulizer treatments would never disrupt his workday. [*Id.* at 4.]

"Although the RFC assessment is a function-by-function assessment … the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." *Knox v. Astrue*, 9327 F. App'x.

652, 657 (7th Cir. 2009) (internal quotations omitted).  The individual claiming disability bears the burden of proof at steps one through four of the five-step sequential evaluation set forth by the SSA.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021).  "It [is the claimant's] burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting [his] capacity to work." *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018).  "When conducting the RFC analysis, an ALJ must include all of a claimant's limitations supported by the medical record." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (international quotation marks omitted).  "Crucially, however, an ALJ need only include limitations that are supported by the medical record." *Id.*

The Court agrees with the Commissioner that the ALJ did not err in formulating the RFC by not including time off task for Joshua's nebulizer treatments.  Importantly, there is no medical source evidence indicating that Joshua would need to be off task to perform his nebulizer treatments.  Joshua cites his own hearing testimony and claims that it is "logically resultant" that he would need to be off task to use his nebulizer.  But without any evidence indicating that Joshua required greater limitations or that Joshua's nebulizer treatments would require him to be off task, the Court finds that remand is not warranted.  Although there is medical evidence indicating that Joshua was prescribed nebulizer treatments and was required to use his nebulizer up to three or four times per day, there is nothing in these records supporting his claim that each treatment takes thirty minutes, that all treatments needed to be done during the workday, or that a treatment would have significantly disrupted his ability to stay on task.  [*See* dkts. 12-7 at 13; 12-8 at 10; 12-9 at 31, 38, 41, 68; 12-11 at 4, 19; 12-13 at 28; 12-17 at 61.]  In fact, the cited records do not shed any light on how long each treatment took.  Therefore, the Court finds that Joshua has not met his burden of showing that his nebulizer treatments required greater limitations than those prescribed

by the ALJ, and the Court thereby concludes that the ALJ did not err on this point. *Durham v. Kijakazi*, 53 F.4th 1089, 1096 (7th Cir. 2022) (noting that it's the claimant's burden to show that her impairment would affect her ability to perform work or necessitated limitations beyond those the ALJ prescribed in the RFC).

Moreover, it is clear from the decision that the ALJ considered Joshua's nebulizer treatments when assessing the RFC. [*See* dkt. 12-2 at 16 (noting that Joshua "indicated that he takes inhalers and treatments with a nebulizer").] The ALJ concluded that Joshua's "moderate respiratory disease was well managed with medications when [Joshua] was complaint [sic] with treatment recommendations." [*Id.*] Contrary to Joshua's assertion, the ALJ was not required to credit his testimony regarding nebulizer treatments by including corresponding limitations in the RFC. And as the Commissioner points out, there is no evidence in the record how many, if any, of Joshua's nebulizer treatments would need to occur during the workday.[4]

The Court is also not persuaded by Joshua's suggestion that the ALJ should have treated his medical providers' nebulizer prescriptions and recommendations as medical opinions. Joshua argues that the ALJ included no discussion of the factors of supportability and consistency with respect to this "prescribed treatment." [Dkt. 14 at 18.] While it is true that an ALJ must specifically address how he considered the supportability and consistency of a medical opinion, *see* 20 C.F.R. § 404.1520c(b)(2), Joshua has cited no authority indicating that a prescription alone from a medical provider amounts to a "medical opinion" under the regulations such that an express discussion of supportability and consistency is warranted. And there is nothing in the cited records indicating

---

[4] Joshua argues that the Commissioner violated the *Chenery* doctrine by contending that he could have timed his treatments outside of work, since the ALJ did not note that in his opinion. Although the ALJ's decision does not include that reasoning, the Commissioner appears to have offered this argument to merely illustrate how Joshua failed to meet his burden of showing that his nebulizer treatments would interfere with work.

that these medical providers were opining as to Joshua's ability to perform full-time work or disability status. For all of these reasons, the Court finds that Joshua has not shown reversible error on the points he raises in this section.[5]

### B. The ALJ's Discussion of the Listings

Joshua argues that the ALJ erred by failing to offer a single word of analysis as to whether he met or medically equaled Listing 3.14 (Respiratory Failure).[6] [Dkt. 14 at 19.] According to Joshua, the ALJ only specifically addressed Listing 3.02, and the extent of the ALJ's analysis of all other Listings was that the state agency physicians reviewed the record and determined that Joshua's impairments did not meet the criteria of any of the listed impairments. [*Id.* at 20.] Joshua asserts that the ALJ erred by not addressing Listing 3.14, even though he "arguably appears to have met (and almost-assuredly medically equaled) that Listing." [*Id.* at 21.] Specifically, Joshua argues that he was on a ventilator or BiPAP—or his treating specialists intended for him to be on a ventilator three times at least thirty days apart within a six-month period—which Joshua claims satisfies the requirements of Listing 3.14. [*Id.* at 22.] Accordingly, Joshua asserts that the ALJ failed to mention the relevant Listing by name and provide a "more than perfunctory" explanation for his conclusion that he did not meet or medically equal Listing 3.14. [*Id.* at 23 (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004).]

---

[5] The Court also finds that Joshua's related contention that the ALJ erred at Step Five in failing to pose hypotheticals to the VE that fully captured his functional limitations does not warrant remand. [Dkt. 14 at 14.] Since Joshua has not demonstrated that he required time off task to perform nebulizer treatments, the ALJ had no duty to include any such limitations in the hypotheticals he provided the VE at Joshua's hearing.

[6] Listing 3.14 is "[r]espiratory failure . . . resulting from any underlying chronic respiratory disorder except [cystic fibrosis] . . . requiring invasive mechanical ventilation, noninvasive ventilation with BiPAP, or a combination of both treatments, for a continuous period of at least 48 hours, or for a continuous period of at least 72 hours if postoperatively, <u>twice</u> within a 12-month period and at least 30 days apart." *See* Listing 3.14, at 20 C.F.R. pt. 404, subpt. P, app. 1 (emphasis in original).

In response, the Commissioner argues that Joshua failed to establish a prima facie case that he met or equaled Listing 3.14 and that the ALJ sufficiently articulated his Listings findings. [Dkt. 15 at 16-17.] Specifically, the Commissioner contends that the state agency physicians considered the record evidence and found that the Listings for respiratory impairments were not met or equaled, and the ALJ reasonably relied on these findings in concluding that Joshua did not meet the criteria for any listed impairments. [*Id.* at 17.] While Joshua argues that the ALJ should have specifically identified Listing 3.14, the Commissioner contends that any failure by the ALJ was harmless because Joshua has not shown he met or equaled the criteria of Listing 3.14. [*Id.* at 17-19.] Moreover, the Commissioner contends that Joshua has focused only on the part of the ALJ's decision that specifically addressed the Listings, but an ALJ's decision must be read as a whole and other parts of the decision indicate that the ALJ adequately considered Joshua's respiratory impairments. [*Id.* at 19.]

In reply, Joshua claims that the Commissioner's defense amounts to another violation of the *Chenery* doctrine, since he allegedly offers *post hoc* rationale that Joshua could not meet or medically equal the presumptive Listing. [Dkt. 19 at 4.] Joshua reiterates that the ALJ did not specifically address Listing 3.14 and insists that a reasonable factfinder could not conclude that Joshua did not require either a ventilator or BiPAP within the timeline prescribed by Listing 3.14. [*Id.* at 4-5.] Joshua argues that the ALJ was not permitted to rely solely on the findings of the state agency consultants, since the Seventh Circuit Court of Appeals has held that an "ALJ may rely solely on opinions given in Disability Determination and Transmittal forms and provide little additional explanation only so long as there is no contradictory evidence in the record." [*Id.* at 5-6 (quoting *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006).] Joshua points to record evidence that he believes is contradictory. [*Id.* at 6.]

"Under a theory of presumptive disability, a claimant is eligible for benefits if [he] has an impairment that meets or equals an impairment in the Listing of Impairments." *Barnett*, 381 F.3d at 668 (citing 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1). Each listing specifies criteria that, if met, means that the claimant is presumptively disabled. *Id.* (citing § 404.1525(a)). A claimant can also show that his symptoms "are equal in severity to those described in a specific listing" and be found presumptively disabled. *Id.* (citing § 404.1526(a)). "When evaluating whether an impairment is presumptively disabling under a listing, the ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Jeske v. Saul*, 955 F.3d 583, 588 (7th Cir. 2020) (internal quotation marks and citation omitted).

The Court agrees with the Commissioner that Joshua has not shown that the ALJ erred in the Listing analysis. In finding that Joshua did not meet or equal any Listings, the ALJ provided the following analysis:

> In this case, the state agency consultants determined that the claimant's impairments did not meet the criteria of any of the listed impairments. No treating physician has mentioned findings medically equal in severity to any of the listed impairment[s].

[Dkt. 12-2 at 13.] The ALJ also specifically addressed Listing 3.02, Chronic Respiratory Disorders, explaining that the record evidence failed to satisfy its criteria. [*Id.* at 15.] Joshua does not challenge that conclusion; rather, he contends only that the ALJ should have addressed Listing 3.14.

To start, the Court notes that Joshua's counsel did not raise Listing 3.14 at Joshua's hearing or otherwise argue that Joshua required invasive or noninvasive ventilation. In *Wilder v. Kijakazi*, the Seventh Circuit Court of Appeals explained that ALJs are not required to "name and discuss every Listing in their written decisions" and that "[s]uch a requirement would be particularly

unreasonable where, as here, the claimant [did] not identify a Listing at the hearing." 22 F.4th 644, 652 (7th Cir. 2022). *Wilder* emphasized that:

> [A] claimant bears the burden of proof at step three. Social Security proceedings are indeed inquisitorial rather than adversarial. But neither the SSA's regulations nor the Social Security Act impose an affirmative obligation on ALJs to scour the Listings for a possible match, no matter how unlikely. Social Security Regulation 17-2p provides: If an [ALJ] believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment.

*Id.* at 653 (internal quotation marks and citations omitted). Because Joshua did not identify Listing 3.14 at his hearing and has not shown that he argued this Listing at any other stage of the proceedings, the Court finds that Joshua has not met his Step Three burden, and the ALJ did not err by failing to specifically address Listing 3.14.

Additionally, the articulation requirement when addressing the Listings is not high, and the Court must read the ALJ's decision as a whole when determining whether the ALJ's Step Three analysis was deficient. *See Jeske*, 955 F.3d at 588 (explaining that an ALJ must only provide "more than a perfunctory analysis"); *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) (clarifying that the ALJ's decision must be read "as a whole" and that "[w]e do not discount [an ALJ's Step Three analysis] simply because it appears elsewhere in the decision"). In addition to Joshua's failure to raise Listing 3.14 during the administrative proceedings, the Court concludes that remand is not required because the ALJ sufficiently articulated his analysis, reasonably relying on the fact that state agency consultants reviewed the relevant record evidence and concluded that Joshua did not satisfy the criteria for any Listings. The ALJ specifically noted that no treating or examining physician had made any findings consistent with Joshua medically equaling any Listings. [Dkt. 12-2 at 14.] Beyond his express analysis of the Listings at Step Three, the ALJ also considered

Joshua's respiratory impairments when discussing the RFC, noting that his symptoms were managed when he was compliant with his treatment recommendations. [*Id.* at 16.] This discussion provides the Court with sufficient detail to review the Step Three analysis "in a meaningful way." 778 F.3d at 650.   Thus, the Court finds that Joshua has not shown reversible error with the ALJ's Listings analysis.

Joshua argues that the Commissioner's arguments violate the *Chenery* doctrine, but because the Commissioner's defenses can be traced to the ALJ's decision, the Court disagrees.  Moreover, the records that Joshua cites in support of his argument do not appear to demonstrate that he satisfied or otherwise medically equaled the time requirements of Listing 3.14 or the actual use of a ventilator. *See Sosinski v. Saul*, 811 F. App'x 380 (7th Cir. 2020*)* (noting that "we do not reverse if the claimant fails to show he meets the criteria for that listing"); *Combest v. Berryhill*, 2017 WL 1289340, at *3 (S.D. Ind. Feb. 16, 2017) (internal quotation marks omitted) (noting that "the Court will not remand a claim to the Commissioner without a showing by the claimant, consistent with the burden of proof at step three, that remand might lead to a different result").  For all of these reasons, the Court finds that Joshua has not shown reversible error regarding the ALJ's Listing analysis.

## IV.  CONCLUSION

The standard for disability claims under the Social Security Act is stringent.  *Plessinger v. Berryhill*, 900 F.3d 909, 911 (7th Cir. 2018). "The Act does not contemplate degrees of disability or allow for an award based on partial disability." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010) (citing *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985)).   "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments

and for whom working is difficult and painful." *Id.* Taken together, the Court can find no legal basis presented by Joshua to reverse the ALJ's decision that he was not disabled during the relevant period. Therefore, the ALJ's decision is **AFFIRMED**. Final judgment shall issue accordingly.

      **SO ORDERED.**

    Date: 3/18/2024

Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email